209 So.2d 229 (1968)
JUST VALUATION & TAXATION LEAGUE, INC., a Corporation et al., Appellants,
v.
Clyde H. SIMPSON, As Tax Collector of Duval County, Florida et al., Appellees.
No. 36486.
Supreme Court of Florida.
April 10, 1968.
William C. Bostwick of Bostwick & Bostwick, Jacksonville, Mallory E. Horne of Horne, Rhodes & Lamb, Tallahassee, for appellants.
F. William Marr, Jacksonville, for Clyde H. Simpson, Tax Collector, Duval County.
Walter C. Shea, Jacksonville, for Comptroller and Board of County Com'rs.
O.O. McCollum, Jr., Jacksonville, for Duval County Budget Commission.
Wm. Joe Sears, Jr., and Rogers, Towers, Bailey, Jones & Gay and Frank X. Friedmann, Jr., Jacksonville, for Tax Assessor.
Earl Faircloth, Atty. Gen., and Larry Levy, Asst. Atty. Gen., for Fred O. Dickinson, Jr., Comptroller of State of Florida.
ROBERTS, Justice.
We have for review the decision of a Chancellor denying relief to appellants-plaintiffs who sought to strike down on constitutional grounds the ad valorem tax machinery in Duval County, Florida. They contend that a unit of wealth invested in real or tangible personal property is required to pay more ad valorem taxes than the same unit of wealth invested in intangible personal property; that the investor in intangible personal property is favored by a tax limitation provided in Section 1, Article IX, Constitution of Florida, F.S.A., while the investor in real or tangible personal *230 property enjoys no such protection. They further contend that the operating incidence of such a taxing scheme, in its alleged discriminatory tax rate feature, constitutes an unlawful discrimination and tax burden on real and tangible personal property and its owners, and is in violation of the equal protection clauses and due process provisions of Sections 1 and 12, Declaration of Rights of the Florida Constitution, and the equal and due process requirements of the Fourteenth Amendment to the Constitution of the United States. On motion of the appellees-defendants the bill of complaint was dismissed. The Chancellor has favored us with an excellent opinion setting forth the reasons for his ruling.
Sections 1 and 2, Article IX, Constitution of Florida, provides: 
"SECTION 1. Uniform and equal rate of taxation; special rates.  The Legislature shall provide for a uniform and equal rate of taxation, except that it may provide for special rate or rates on intangible property, but such special rate or rates shall not exceed two mills on the dollar of the assessed valuation of such intangible property; provided, that as to any obligations secured by mortgage, deed of trust, or other lien, the Legislature may prescribe an intangible tax of not more than two (2) mills on the dollar, which shall be payable at the time such mortgage, deed of trust, or other lien is presented for recordation, said tax to be in lieu of all other intangible assessments on such obligations. The special rate or rates, or the taxes collected therefrom may be apportioned by the Legislature, and shall be exclusive of all other State, County, District and municipal taxes; and shall prescribe such regulations as shall secure a just valuation of all property, both real and personal, excepting such property as may be exempted by law for municipal, education, literary, scientific, religious or charitable purposes.
"SECTION 2. Legislature to provide for raising revenue; ad valorem taxes except on intangible property abolished.  The Legislature shall provide for raising revenue sufficient to defray the expenses of the State, including State appropriations for the benefit of the uniform system of free public schools provided in accordance with Article XII of the Constitution, and of the State Institutions of higher learning, for each fiscal year, and also a sufficient sum to pay the principal and interest of the existing indebtedness of the State; but after December 31st, A.D. 1940, no levy of ad valorem taxes upon real or personal property except intangible property, shall be made for any State purpose whatsoever; and Section 6 of Article XII be, and the same is hereby repealed."
In the posture in which the case is brought here for review the controlling question is whether or not the separate classification of intangible property for ad valorem taxation with the imposition of a limited rate thereon is valid and not in violation of the Fourteenth Amendment to the U.S. Constitution. Section 12, Declaration of Rights, Constitution of Florida, is not involved since our state constitution expressly authorizes the placing of intangible personal property in a separate classification and fixes a maximum ceiling of two mills thereon. The reasonable classification of property for tax purposes has already been approved by this court. As to the disposition of the question by the courts of this state we quote with approval from the judgment of the learned Chancellor below this language: 
"In Lanier v. Tyson, Fla.App., 147 So.2d 365, text 373, the District Court of Appeal, Second District remarked that:
"`We are aware of the decisions holding that classification of property for tax purposes does not offend against the equal protection of the law guaranteed by the United States Constitution * * * nor does it (subsection *231 (11) of Section 193.11, Florida Statutes) per se contravene the uniform and equal rate and just valuations of the Florida Constitution.'
"In Green v. Walter, Fla., 161 So.2d 830, text 833, the court said that:
"`We are aware of no legal bar to taxation, of intangible property in a category separate and apart from the taxation of other property so long as the classification is not arbitrary or unreasonable and when all under like conditions are treated the same.'
"In Lanier v. Overstreet [Fla.], 175 So.2d 521, Mr. Justice Drew in his dissenting opinion posted the storm warning:
"`To recognize the power of the Legislature to grant exemptions from taxation to certain classes  and that's what it amounts to  will be to destroy the ad valorem taxing system in this State and to place the burden of government on those who are not fortunate enough to be brought within a favored class.'
"Here, however, we are dealing with a constitutional rather than a legislative classification. Obviously this places the provision in a higher but not invulnerable status."
We then reach the question of whether or not the separation of intangible personal property into a separate classification with a state imposed organic ceiling of two mills offends against the Fourteenth Amendment to the Constitution of the United States, often referred to as the equal protection clause of that constitution. Decisions by the federal courts recognizing the power of the state to classify property for the purpose of taxation are legion. We quote from the decision of the Chancellor a few of them: 
"In Frank Walters v. City of St. Louis, 347 U.S. 231, 98 L.Ed. 660, 74 S.C. 505, the court said:
"`The power of the State to classify according to occupation for the purpose of taxation is broad. Equal protection does not require identity of treatment. It only requires that classification rest on real and not feigned differences, that the distinction have some relevance to the purpose for which the classification is made, and that the different treatments be not so disparate, relative to the difference in classification, as to be wholly arbitrary.
"`Our disapproval of the wisdom or fairness of so doing is not a ground for interference. When a state legislature acts within the scope of its authority it is responsible to the people, and their right to change the agents to whom they have entrusted the power is ordinarily deemed a sufficient check upon its abuse. When the constituted authority of the State undertakes to exert the taxing power, and the question of the validity of its action is brought before this court, every presumption in its favor is indulged, and only clear and demonstrated usurpation of power will authorize judicial interference with legislative action.
"`The sole question here is whether in levying a tax on those whom it has plenary power to tax, the City has introduced classification and discriminations so unreasonable as to deny to appellants due process or equal protection of the law.
"`In its discretion a state may tax all, or it may tax one or some, taking care to accord to all in the same class equality of rights.'
"In Madden, Executor v. [Commonwealth of] Kentucky, 309 U.S. 83, 60 S.Ct. 406 [84 L.Ed. 590], the court stated:
"`The broad discretion as to classification possessed by a legislature in the field of taxation has long been recognized. This Court fifty years ago concluded that "the Fourteenth Amendment was not intended to compel the state to adopt an iron rule of equal taxation," and the passage of time has only served *232 to underscore the wisdom of that recognition of the large area of discretion which is needed by a legislature in formulating sound tax policies. Traditionally classification has been a device for fitting tax programs to local needs and usages in order to achieve an equitable distribution of the tax burden. It has, because of this, been pointed out that in taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.'
"The Supreme Court of the United States has consistently applied the `reasonable classification' rule. In Allied Stores of Ohio v. Bowers, 358 U.S. 522 [79 S.Ct. 437], 2 [3] L.Ed.2d 480 (1959), the Court stated:
"`The States have a very wide discretion in the laying of their taxes. When dealing with their proper domestic concerns, and not trenching upon the prerogatives of the National Government or violating the guaranties of the Federal Constitution, the States have the attribute of sovereign powers in devising their fiscal systems to ensure revenue and foster their local interests. Of course, the States, in the exercise of their taxing power, are subject to the requirements of the Equal Protection Clause of the Fourteenth Amendment. But that clause imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation.
* * * * * *
"`If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law. That a statute may discriminate in favor of a certain class does not render it arbitrary if the discrimination is founded upon a reasonable distinction, or difference in state policy.'
"In Nashville, C. & St. L.R. Co. v. Browning, 310 U.S. 362, 60 S.Ct. 968, 84 L.Ed. 1254, the court stated that:
"`The states may, consistently with the Federal Constitution, tax some kinds of property at higher rates than others.'
"The latest case in the United States Supreme Court on this subject is American Oil Company v. Neill, 380 U.S. 451, 14 L.Ed.2d 1, 85 S.Ct. 1130. In an opinion handed down April 16, 1965, Mr. Chief Justice Warren stated:
"`When passing on the constitutionality of a state taxing scheme it is firmly established that this Court concerns itself with the practical operation of the tax, that is, substance rather than form. (Citations omitted). This approach requires us to determine the ultimate effect of the law as applied and enforced by a State or, in other words, to find the operating incidence of the tax.'
"In Morton Salt Company v. City of South Hutchinson (CCA 10), 159 F.2d 897), the Court significantly said as follows:
"`But, however great the legislative power of taxation, it is not wholly without constitutional limitations. The due process and equal protection clauses of the Constitution do provide some measure of protection against the abusive exaction of a tax. The test of due process, say the courts, is whether the taxing power exerted by the State bears fiscal relation to protection, opportunities and benefits given by the state. In other words, the query is, what has the state given for which it may ask return. Wisconsin v. *233 J.C. Penny Co., supra [311 U.S. 435, 61 S.Ct. 246, 85 L.Ed. 267]. If the tax imposed clearly results in such a flagrant and palpable inequality between the burden imposed and the benefit received that it amounts to an arbitrary taking of property without compensation, it is said to violate the due process guaranty under the Fourteenth Amendment. All of the cases which have affirmed the broad powers of taxation have recognized these limitations, i.e., see Dane v. Jackson, supra [256 U.S. 589, 41 S.Ct. 566, 65 L.Ed. 1107]; Henderson Bridge Co. v. Henderson City, 173 U.S. 592, 614, 19 S.Ct. 553, 43 L.Ed. 823; Houck v. Little River [Drainage] Dist., supra [239 U.S. 254, 36 S.Ct. 58, 60 L.Ed. 266]; Cooley, Sec. 144.'"
So it is our opinion and we hold that the citizens of Florida had the right by constitutional amendment to place intangible personal property in a separate classification and to authorize the Legislature to impose a special tax thereon and to place a limit on the amount of the tax thus to be imposed, and that in doing so they did not offend against the due process clause of the Constitution of the United States, and the learned Chancellor was eminently correct in so holding.
The other contentions have been examined and considered and found to be without merit, so the judgment of the court here under review is
Affirmed.
CALDWELL, C.J., DREW, ERVIN and ADAMS, JJ., and WALKER and POPPER, Circuit Judges, concur.