## HORTON, Judge of Probate, *vs.* MOBILE SCHOOL COMMISSIONERS.

[APPEAL FROM ORDER GRANTING MANDAMUS.]

1. *"Act to establish revenue laws for the State of Alabama," approved Dec. 31, 1868, section* 136 *of, what laws not repealed by.*—Section 136 of the revenue law, entitled "An act to establish revenue laws for the State of Alabama," approved December 31st, 1868, does not repeal the laws incorporating and establishing the Mobile board of commissioners of the public schools in the county of Mobile.
2. *Acts establishing board of commissioners; funds collected under authority of, to whom payable.*—Funds collected under authority of the acts establishing said board of commissioners, in the possession of the judge of probate of Mobile county, are properly payable to said commissioners upon demand, for the use of said public free schools.
3. *Revenue law, section* 136 *of, the words "municipal purposes" construed.*—The words "municipal purposes," in said section of said act, are not words of any definite, technical import, and they may be so construed as to apply to a corporation established to carry on the business of a public free school, and to raise funds for its support.

APPEAL from the Circuit Court of Mobile.
Tried before the Hon. JOHN ELLIOTT.

THIS was an appeal by Gustavus Horton, judge of probate, from an order of the circuit court of Mobile, granting a peremptory *mandamus*, commanding him to pay over the sum of $6,095 02 of taxes, in his hands, to the Mobile school commissioners, for school purposes.

The other facts of the case appear in the opinion.

JOSHUA MORSE, Attorney-General, for appellant.—1. The principal point in this case is as follows, to-wit: Does the act of January 10, 1854, and of February 15, 1856, and the ordinance of the convention of November 30, 1867, entitle the school commissioners of Mobile to the money in question, at this time?

The acts above cited are rendered inoperative by the constitution of the State.—See article 11, p. 18.

The ordinance of the convention, (No. 21,) ratifying the above acts, was passed November 30, 1867. This was an act of legislation, and can not stand, if it conflicts with the constitution, which was not completed and signed by the officers, as a whole, until the 6th of December, 1867.—See Constitution, and Ordinance No. 21.

2. But if these several acts are not rendered inoperative by the constitution, they are repealed by the revenue law of December 31, 1868. The two are utterly repugnant, and the first must fall, or the latter is inoperative in Mobile, so far as it affects this school fund. Section 106 of the revenue law requires every person in this State, including the county of Mobile, to pay to the county treasurer the required amount for any license he may take out. Section 109 requires such county treasurer to pay over the amount to the State auditor, by the second week in March, 1869, and every three months thereafter. No exception is made in the case cf Mobile. The record shows, that the probate judge collected this money in his official capacity; but under what law is not shown, except the act of 1854. If he has any such legal authority, it should be shown in the record.

3. All laws upon the subject of taxation, general or special, are repealed.—Revenue Law, § 136; also, §§ 106, 107. It is true, an exception is made of those enacted for "municipal purposes."

The acts in question were not passed for "municipal purposes." They were passed for educational purposes. Though municipal in their local extent or jurisdiction, they were not enacted for municipal purposes.—See Acts of Jan. 10, 1854, p. 190; Feb. 15, 1856, p. 148; Constitution of Alabama, article 11; Ordinance No. 21, Convention of 1867; Revenue Law, sections above cited.

P. HAMILTON, for appellee.—1. The right of the commissioners to these license taxes is established by act of February 15, 1856, (Pamph. Acts, 1855-6, p. 148,) and so declared by the ordinance of November 30, 1867, (Acts, 1868, p. 169,) and affirmed by board of education, August 11,

1868, (Acts, 1868, p. 148;) see, also, Pamphlet Acts of 1853–4, p. 180.

The authorities and powers of the Mobile school commissioners originated in an act of the general assembly of the State of Alabama in 1826.—Act of January 10, 1826, (Pamph. Acts, 1825–6, p. 35;) amended Act, December 19, 1836, (Pamph. Acts, 1838–9, p. 51;) Act, February 3, 1840, (Pamphlet Acts, 1839–40, p. 114;) February 15, 1843, (Pamph. Acts, 1842–3, p. 58;) February 4, 1846, (Pamph. Acts, 1845–6, p. 192;) February 9, 1852, (Pamph. Acts, 1851–2, p. 464;) January 16, 1854, (Pamph. Acts, 1853–4, p. 190;) February, 1856, (Pamph. Acts, 1855–6, p. 148;) Ordinance of November 21, 1867, *supra;* Act of Board of Education, Aug. 1, 1868, *supra.*

2. There is no dispute as to facts in the case.

3. The only defense presented, is to be found in section 136 of the act of December 31, 1868, (Acts, 1868, p. 340): "All laws or parts of laws, of a general or special character, except those enacted for municipal purposes, upon the subject of taxation, be and the same are hereby repealed." The only question is, does this section repeal the act of February 15, 1856, under which the petitioners claim to be entitled to this money?

Petitioners contend it does not—

1st. Because they are within the express words of the exception—that is, that this system of taxation, inaugurated by the act of 1826, and continued by the subsequent legislation, for the support of public schools in the county of Mobile, is taxation for municipal purposes.

2. "Municipal" comes from the latin "*municipia,*" and in its origin related to the affairs of cities, which had the right of local self-government.—See Dictionary.

It has several meanings. Sometimes it refers to the affairs of a nation, as distinguished from international affairs. Municipal law, as opposed to international law. More generally now it is used to designate the affairs of a district, whether it be of a city, or county, or division of country, less than the whole country, or nation, to which the country belongs, as distinguished from the affairs of the whole state or nation.—See Bouvier's Law Dictionary; Webster's

Dictionary; Johnson's Dictionary. Johnson defines " municipal," " belonging to a corporation;" Wharton's Law Lexicon says, " municipal law, now more generally applied to the customary laws that obtain in any particular city or province, and which have no authority in neighboring places."

The regulation of these several matters, as of the poor, of public schools, loan affairs, &c., pertain to this description of municipal law, and the officers in charge of these matters are held to be corporations.—Ang. & Ames on Corp. § 22. And if corporations, as declared, (2 Wend. 109; Act of 1826, p. 35; 3 How. (Miss.) 84; 13 Ill. R. 24, 30,) they must be municipal corporations, as they form a part of the public government of the State.—1 Stew. & P. 190; 5 Cowen, 309; 23 Barb. 176; 13 Miss. 192. And being municipal corporations, (that is, charged with public duties, relating to the government of public matters in a certain district or country,) the repeal does not apply to the revenue and taxes coming to this body.

3. But the meaning of the statute is the intention of the law-giver, as expressed. If the form of expression does not furnish sufficiently satisfactory evidence of that intention, resort may be had to other means of construction.

The scope of the whole is to be regarded.—9 Bacon's Abgt. 239, 246. And when great inconvenience will result from a particular construction, that construction is to be avoided, unless the meaning of the legislature be plain, &c. 9 Bacon on Statute, 240, 255.

4. The school organization for the county is distinct from the organization provided by the constitution and laws of Alabama for the public schools of the State. The former originated in 1826.—See Acts of Alabama cited, *supra.* The latter originated in 1854, and has since been continued by distinct legislation.—See Acts of February 15, 1854, (Pamph. Acts, p. 8,) and February 14, 1856, (Pamph. Acts, p. 33;) Constitution of Alabama, 1867.

5. Now, if the act of December 31, 1868, operates a repeal of all other acts on the subject of taxation, then the system of public schools for the county is swept away.

To maintain these county schools, revenue is necessary;

and that revenue is wholly derived from special taxation. If that revenue is destroyed, the system is gone; for the act of 1868 provides no revenue whatever for the use of these schools. It provides some revenue for the public school fund of the State, e. g. from poll-tax, and from insurance business, but none at all for the system of county schools, and nowhere authorizes either the board of school commisioners or the board of county commissioners to levy any taxes for this purpose.

Certainly it can not be pretended, that it was the intention of the legislature, in its repealing clause, to effect any such thing as that; such is not within the intended scope of the act, which was " to establish revenue laws for the State of Alabama."

There is room enough for the operation of this repealing clause, in the variety of laws which had been previously passed on the subject of taxes, both general and special, for State purposes, and which were in existence at the date of this enactment.

The formula of repeal in former acts had been of " all laws and parts of laws in conflict with" the several statutes, which left a large body of legislation on which disputes might arise—so that, upon the enactment of this, a new system of taxation, there was a vast amount of legislation on which this repeal could properly and wisely operate; and there is no occasion to extend it to systems of local and municipal legislation for taxing purposes, not within the object of repeal, and which there was no occasion, of public or private necessity, or convenience, to disturb or repeal.

It is accordingly contended, that the claim of the school commissioners is within the very terms of exception, limiting the repeal contained in the act of 1868; and that this must be so from the very object and intent of the act of 1868, and the necessary legal intention of the legislature.

The act of the board of education, of August, 1868, *supra*, shows that the board of Mobile school commissioners is recognized by that body, and taken under its general charge and supervision; so there is no conflict between the

two systems, and the one is not superseded by the other, or affected by the constitution of the State.

PETERS, J.—By an act, entitled "An act to regulate the system of public schools in the county of Mobile," approved on the 16th day of January, 1854, the board of Mobile school commissioners, a corporate body then organized and existing in the county of Mobile, in this State, were clothed with "power and authority to establish and regulate a system of public schools in said county, and to devise and put in force, and execute such plans for the increase of knowledge, educating youth, and promoting the cause of learning in said county, as to them may appear expedient." In order to effect these high purposes, this corporation was authorized, by said act, to raise funds by taxation in the manner prescribed in said act. Some of these taxes were collected by the tax collector and deposited in the bank of Mobile ; others were collected on licenses, and paid to the judge of probate of Mobile county. Of these last, the sum of $6,095 02 had accumulated in the hands of the appellant, said Gustavus Horton, judge of probate of the said county of Mobile. This accumulation had accrued on taxes thus paid on licenses, since the 1st day of January, 1869, and since the passage of the revenue law of this State, entitled "An act to establish revenue laws for the State of Alabama," approved December 31st, 1868. This fund thus collected, and in the hands of said judge of probate as aforesaid, was demanded by said Mobile school commissioners of said judge of probate, and required to be paid to them, under authority of said act of January 16th, 1854, above referred to, for the purposes therein specified. The judge of probate refused, on said demand, to pay said funds to said school commissioners for the uses of said corporation. Thereupon, said Mobile School Commissioners, as a corporate body, applied " to the circuit court for a State's writ of *mandamus*, and that said Gustavus Horton, as such judge of probate, be commanded, without delay, to pay said commissioners said sum of $6,095 02, so in his hands aforesaid." On the hearing of said application, the court ordered a peremptory *mandamus*

to be issued to said judge of probate, commanding him to pay over to said Mobile school commissioners said sum of $6,095 02, so in his hands as aforesaid. Said order was granted on the 9th day of June, 1869. From this order said Horton appeals to this court.—Pamphlet Acts 1868, p. 410.

The sole question raised upon the record in this case, is whether the revenue law of the 31st December, 1868, repeals the public school laws of the county of Mobile of the 16th January, 1854, and other laws passed in aid of said system of public schools in said county, and the ordinance of the board of education of this State, approved August 11th, 1868, entitled "An act in relation to schools in the city and county of Mobile."—Pamphlet Acts, 1853, 1854, p. 190, No. 307; Pamphlet Acts, 1868, pp. 297, 340; ib. 148.

It is to be presumed, as a general rule, that if it is the purpose of the general assembly to overturn a whole system of legislation upon a distinct and important interest of the State and abandon it, it will be done by some direct and positive measure, and not by indirection and implication. The courts are bound to regard the legislative department of the government as competent in knowledge and ability, fully to comprehend and provide for all the great interests of the people with which they have to deal. Theoretically, the legislature is the depository of the supreme law-making power of the State, under such limitations as the people, by their constitution and the constitution of the general government, may think proper to impose. The people are the ultimate sovereign power. Such a body as the legislature, then, must be supposed to possess capacities in every way equal to its high duties, by all the co-ordinate branches of the government.

Then, in the construction of the laws which this department of the government enacts, the courts are not to look at what may be supposed the wisdom or the want of wisdom in such laws, but to the object sought to be accomplished, and the appliances by which that object is to be achieved. These two, combined, create what is called the intent of the legislative body. And this intent is to be the

rule of the courts in the interpretation of their laws.   And this intent is to be discovered from the language used and from the object sought to be accomplished by the laws enacted.—Sedg. Stat. 238, 233 ; *Winslow v. Kimball*, 25 Maine, 493.

In this case, there is a succession of enactments from January 25th, 1826, to August 11th, 1868, a period of above forty-two years, by the legislative department of this State, which has been designed to establish and perfect a system of public and free instruction in the county and city of Mobile, and by which large sums of money have been raised and appropriated to that important end ; and which, from a very humble and feeble beginning, has reached a capacity to bestow the inestimable blessings of education upon so large a number as four thousand children, in a single year.   Among a people where education is so much cherished and respected, it can not, with consistency, be supposed, that it was the object of the last general assembly of this State to strike this eminently beneficial system down in the midst of its usefulness and success, without a direct and open assault—without a law for its peremptory repeal.   To infer that this has been done by omission, mistake or indirection, when it was not intended, is to impugn the legislative body with a want of a proper knowledge of their highest and sacred duties to the people.   Such an omission, or mistake, or failure to do what was intended, might be, with some show of reason, attributed to individuals, but it can not be affirmed of the supreme legislative power of the State.   Their knowledge and reason are as perfect as that of any other department of the State government.   And the courts are not authorized to infer that the legislature acts unwisely, or without a view to promote the general good, which is, indeed, the highest law.   *Salus populi suprema lex.—The People v. Canal Commissioners*, 3 Scam. 153.

Governed by these principles, we can not conclude that it was the intention or purpose of the legislature of 1868 to repeal and overturn the important system of public school instruction, long and usefully established in the city and county of Mobile.   If they did not intend to do this,

they did not intend to take away the means by which its usefulness and efficiency were mainly, if not wholly, supported. They intended to do what the public good required; that is, to leave this eminently useful system of public instruction where the board of education, and the laws of the land have placed it.—Acts 1826, p. 35; Acts 1836, p. 51; Acts 1839, 1840, p. 113; Acts 1842, 1843, p. 58; Acts 1845, 1846, p. 192; Acts 1851, 1852, p. 464; Acts 1853, 1854, p. 190; Acts 1855, 1856, p. 148; School Board Ordinance, No. 8; Pamphlet Acts 1868, p. 158.

It is true, that where two acts of the legislative body conflict, so that both can not stand without contradiction, the more recent act must prevail over the one of prior date. That is, the former is supposed to have been impliedly repealed by the latter. But this presumption is never entertained, when both laws may stand together. And it is the duty of the court so to construe them, if this can be done with consistency and reason.—*Beales v. Hale,* 4 How. U. S. 37; *Com. Bank v. Chambers,* 8 S. & M. 9; *Ham v. The State,* 7 Blackf. 314; *Milne v. Huber,* 3 McLean, 212; *Williams v. Potter,* 2 Barb. 316.

Here, it seems to me, there is no conflict or repugnance between the revenue law, approved December 31st, 1868, and the series of enactments creating the system of common schools and providing for their support in the city and county of Mobile, under which the appellees claim the funds in controvery in this case. The revenue law provides for the assessment and collection of the taxes of the State. It does not pretend to determine their appropriation. The Mobile school laws claim the appropriation of certain taxes to the uses to which the State has devoted them. These may both stand together. And it seems that the special tax may be collected in a special manner.—*Morris v. D. & S. Canal,* 4 Watts & Sergt. 461; *Bruce v. Schuyler,* 4 Gilm. 221.

But even if this were not so, the exception in the repealing section is broad enough to cover the exigencies of this case. This repealing section is in these words:

" Sec. 136. Be it further enacted, That all laws or parts of laws, of a general or special character, *except those enacted for municipal purposes,* upon the subject of taxation

in this State, be and the same are hereby repealed."— Pamphlet Acts 1868, p. 340.

The word *municipal*, in this exception, has no well-defined technical meaning, nor does the language of the revenue act seem to confine its import to any very narrow bounds. It is evidently used in a general and not in a particular sense. The legislature was aware that it did not apply solely to incorporated towns and cities; but that it was equally applicable to incorporated bodies organized for the accomplishment of great and important public purposes, which, for the sake of unity and successful administration, needed a body corporate, and special laws for its management. *Municipal* has been defined to be that which belongs to a corporation or a city, and to include the rules or laws by which a particular district, community or nation is governed. It may also mean local, particular, independent. Bla. Com. 44; 2 Kent. 275; 2 Burrill's Law Dict. 215; Webster, Worcester *ad voc.*, and authorities cited in appellee's brief. Any of these expositions of the word *municipal*, will, without any strain of construction, let in the corporation constituting the appellees in this suit.—*Jones v. Jones*, 6 Shep. 308.

We therefore hold, that it is a municipal corporation, and that taxes authorized to be assessed and collected for it, are for municipal purposes, and that the laws under which they are authorized to be collected are not repealed by the repealing section of the revenue law above referred to.—*Clark et al. v. Mobile School Commissioners*, 36 Ala. 621; *People v. Durick*, 20 Cal. 94; *Cole v. Supervisors*, 11 Iowa, 552.

This may not be the place to repeat the praises of learning, but it has ever been regarded as the hand-maid of wisdom; and wisdom is the "principal thing" in all the great purposes of life.—Prov. ch. III, v. 13. *et seq.* Schools are necessary for its attainment, and to make these successful, they must be supported. And the education of the children of any community is certainly one of the most important municipal interests of the State in that community. This is declared in our fundamental law, in the charters of our numerous colleges, and in the many private acts for

the protection of our public and private schools, which are found almost everywhere in the book of our legislative enactments.—Const. Ala. Art. XI ; Bacon's Adv. of Learning, *abique ;* Webster's Speech in Dartmouth College v. Woodward, 1 Webster's Speeches, 110, *et seq* ; 2 Kent, 195, 196, *et seq.*

As the judgment of the court below was in conformity with this opinion, it is affirmed. And the said appellant will pay the costs of this appeal in this court and the costs in the court below, out of the funds in his hands, claimed by said commissioners ; and the honorable judge of the circuit court of the county of Mobile, in which said judgment was rendered, will enforce the same as required by law.