## The Benevolent Association of Elks v. Wintersmith, Tax Commissioner of Jefferson County.

(Decided June 24, 1924.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Taxation—Benevolent Association of Elks Not Institution of "Purely Public Charity."—Benevolent Association of Elks held not an institution of "purely public charity" within Constitution, section 170, and its property is not exempt from taxation.

2. Taxation—Use of Property, and Not Ownership, Determines Whether Exempt.—It is use to which property is put, and not ownership, which determines whether it is exempt from taxation under Constitution, section 170.

JOHN L. WOODBURY, BENJAMIN H. SACHS and KENDRICK R. LEWIS for appellant.

J. MATT CHILTON and WM. CLARKE, JR., for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON— Affirming.

The Benevolent Association of Elks commenced this action in the Jefferson circuit court against Thomas M. Wintersmith, tax commissioner of Jefferson county, seeking an injunction against him in his official capacity, restraining him from making an assessment upon the real estate and other property owned by the appellant association in Jefferson county, at the southwest corner of Third and Chestnut streets in the city of Louisville, Kentucky, the purpose· of the action being to have the association's physical properties adjudged exempt from taxation for state and county purposes under section 170 of our Constitution on the ground that the building and its appurtenances are and will be used for charitable and educational purposes in such a manner and to such an extent as to render it an institution of purely public charity. The building, a new one hardly completed at the commencement of the action, is of the value of something near one million dollars, aside from the ground on which it stands. While the association has heretofore had a home in the city of Louisville, it was a modest one in comparison with the present one. At no time in the past has the property of the Association been ex-

empt from taxation for state and county purposes although its charitable work was much the same as now proposed to be conducted, except on a much smaller scale.

Section 170 of our Constitution designates what property shall be exempt from taxation, and reads in part as follows:

"There shall be exempt from taxation public property used for public purposes; places actually used for religious worship with the ground attached thereto and used and appurtenant to the house of worship, not exceeding one-half acre in cities or towns, and not exceeding two acres in the country; places of burial not held for private or corporate profit, institutions of purely public charity and institutions of education not used or employed for gain by any person or corporation, and the income of which is devoted solely to the cause of education."

It therefore appears that this appeal presents but one question, and that is, whether or not the appellant, the Benevolent Association of Elks, is an institution of purely public charity within the meaning of section 170 of our Constitution, for if it is, it is entitled to the relief it seeks; but if it is not an institution of purely public charity, although it devotes much of its time, energy and resources to charity, a part of which is for the benefit of its membership and the balance for the public in general, it cannot have the relief prayed. The facts are set forth in a stipulation signed by the parties, from which we copy the following with respect to the objects and purposes of the society in the acquisition and conduct of its home and other property situated in Jefferson county. Its charter in part reads:

"Said purposes are declared and specified to be to create a charitable and benevolent institution in accordance with the cardinal principles of the Benevolent and Protective Order of Elks of the United States of America; to provide for the relief and assistance of all poor and distressed members thereof; to provide free medical assistance, medicines, nurses and nourishment for its indigent sick, and sustenance for its poor; for the educational development, both mental and physical, of the members and

their families; to aid and assist the needy of all such, their widows and orphans; and also to provide by lease, purchase, construction or otherwise, a home for the said order, with assembly hall, gymnasium, dining room, club rooms and sleeping apartments for the use of members and their guests. To these ends all the avails of the association or corporation shall be devoted without pecuniary profit to any one.''

### Quotations from Stipulations.

''It has been the experience of Louisville Lodge, No. 8, B. P. O. Elks, during the period of the past ten years that from $150.00 to $500.00 per year is expended in the relief of its members. On the other hand, it has expended each year, for purely public charity to the general poor, including destitute children from the public and parochial schools of the city of Louisville and cases reported by public charity organizations, an average sum of from $4,000.00, to $10,000.00 per year.

''The social features included in the new building hereinafter described, are essential to create the enthusiasm and interest among the members which enables the Benevolent Association of Elks, and Louisville Lodge No. 8, B. P. O. Elks, to get their cooperation in its endeavor to raise the necessary funds to accomplish the charitable and educational work it carries on for the poor and needy of the city of Louisville and the community at large.

''This committee (civic or public welfare committee) of the Elks and of the Benevolent Association of Elks has been in the past, is at the present, and will continue in the future to be called on and to work for the furtherance of all things deemed worth while for the community. The mayor and the city officials of the city of Louisville feel free at all times and avail themselves of the opportunity to call on the committee for community welfare work. This committee is also called upon by the juvenile court of Jefferson county to assist in its administration of justice to the juvenile delinquents of the community. Part of its work is along the same lines as that of the Big Brother movement established throughout the country some years ago.''

### SIXTH PARAGRAPH OF STIPULATION.

"When said building is completed it will enclose within its walls the following departments and activities: The building will be of steel and concrete structure, eight storys high, covering the entire lot. The basement will contain the boiler rooms, a swimming pool, baths, and bowling alley. The first floor or main floor will contain the lobby surrounded by stores faceing both Third street and Chestnut street, as well as locker rooms and special shower baths for men, women and children. The second floor will contain an auditorium on one side running the height of two floors and capable of seating twelve hundred people at public lectures. On the other side, a large dining room, three small private dining rooms and proper kitchen equipment to supply same. The third floor will contain the lower portion of the gymnasium and the top half of the auditorium, together with four handball courts, wrestling room, boxing room, indoor golf, squash court and complete physical educational equipment and offices for both male and female physical instructors. The fourth floor will contain the top of the gymnasium and running track, together with library and reading rooms, billiard room and lodge room where the lodge meetings of Louisville Lodge No. 8, B. P. O. Elks will be held. The fifth, sixth and seventh and eighth floors will contain sleeping rooms to the number of one hundred and eighty-four. On the roof there will be outdoor handball courts and tennis courts, as well as outdoor calisthenics."

### QUOTATION FROM LETTER OF MEMBERSHIP COMMITTEE.

"The new Elks' Home will cater to the entire family with its many attractive features. The ball room, beautiful mezzanine, large lounging lobby, ladies' parlor, first class dining rooms with private dining rooms, lodge rooms, billiard room with combination cafeteria, card rooms, gymnasium with separate locker rooms and shower baths for ladies and members, handball courts, both inclosed and open, resting room, hot room, indoor golf, squash courts, bowling alleys, barber shop, library, quiet rooms 184 sleeping rooms of the highest type, all

these features will make the Elks' Home a most attractive building."

QUOTATION FROM PAMPHLET ISSUED BY PLAINTIFF.

"Elks new Club will be operated and conducted in the same manner as the exclusive athletic clubs of the east and west.

"Admission to building will be granted members holding cards and their guests only.

"Members may secure cards for wives, daughters, sisters or mothers.

"Members may secure a ten-day card for any out-of-town guest, entitling such guest to full club privileges for that period.

"Each member will be held strictly responsible for the conduct of guest introduced.

"Members will not be permitted to bring non-Elk residents of Louisville into building except on such occasions as will be covered by house rules. This is in brief what the Elk club of Louisville is preparing to give its members and family. There are many other features of entertainment made possible by the management which we have been compelled to pass over. We shall operate a refined, exclusive club," etc.

A question very similar to the one now before us was presented in the case of Vogt v. City of Louisville, 173 Ky. 119, in consideration of which we said:

"It is well to bear in mind at the outset that exemption from taxation must be strictly construed and one claiming an exemption must show it to be clearly within the spirit and intent of the exception. City of Middlesboro v. New South Brewing Co., 108 Ky. 351; 56 S. W. 427; 21 Ky. Law Rep. 1728; City of Newport v. Masonic Temple Ass'n, 108 Ky. 333, 56 S. W. 465; 21 Ky. Law Rep. 1785; 47 L. R. A. 252.

"One of the best statements of the rule referred to is thus given in Frederick Elect. Lt. & Power Co. v. Frederick City, 84 Md. 599; 36 Atl. 362; 36 L. R. A. 130:

" 'The right of taxation is never presumed to be relinquished, and before any party can rightly claim an exemption from the common burden, it is incumbent upon that party to show affirmatively

that the exemption claim is authorized by law. If there be a doubt upon the subject, that doubt must be resolved in favor of the state, and it is only where the exemption is shown to be granted in terms clear and unequivocal that the right of exemption can be maintained.'

"We do not mean to be understood as saying that De Molay Commandery is a business corporation, created or maintained for gain or profit. On the contrary, its mission is to benefit mankind, and to that end its work is in a large measure charitable. But what we do mean to say is aptly expressed in Bangor v. Lodge, 73 Mr. 428, 40 Am. Rep. 369, as follows:

" 'It is apparent that the defendant corporation can not be regarded as a purely public charitable institution, because it wants the essential elements of a public charity. It has other objects than charity. Whatever its ultimate purposes, they are other than charitable. Its funds are derived, not from devises and gifts as in case of a public charity, but from fees and assessments of its members. The funds so obtained are to be distributed among the poor and needy members, from whom they were collected, and among their wives and children. It is an association for the mutual benefit of its members, and not a charitable institution within the meaning of the statute.

" 'It is manifest that neither De Molay Commandery, nor its building or other property here claimed to be exempt from taxation can be classed as an institution of purely public charity in the meaning of any of the above definitions of such a charity, or in the meaning of section 170 of the Constitution. On the contrary, like the building of the Masonic Lodge, which, in City of Newport v. Masonic Temple Ass'n *supra,* was held to be subject to taxation, its building is maintained solely as a home for the commandery, and substantially the only charity it dispenses is what it does not need to expend in maintaining its home. It is not, therefore, entitled to the exemption claimed; and as the judgment of the circuit court was to this effect, it must be and is hereby affirmed.' "

It is the use to which the property is put and not the ownership thereof which determines whether it is .

exempt from taxation under section 170 of the Constitution. Commonwealth v. First Christian Church of Louisville, 169 Ky. 410; City of Louisville v. Werne, 80 S. W. 224. The appellant association has not been held to be one of purely public charity, but on the contrary has been classed with other secret societies engaged in part in the work of public charity but mostly devoted to benevolence on behalf of its own members, which means it is, in part, a private charity. In the case of Newport v. Masonic Temple Association, 108 Ky. 333, it is said:

"There are many commendable organizations owning a large amount of property and doing often much work of benevolence, such as the Knights of Pythias, the Elks, the Odd Fellows, the Red Men, Sons of Temperance, and the like; but so long as they confine their beneficience to their own members, or their widows or orphans or are not designed for charitable purposes purely public, they cannot be regarded as institutions of 'purely public charity' within the meaning of our Constitution. To so hold would be to give substantially no effect to the words 'purely public' in that instrument, and leave few, if any, private charities which would not be exempt from taxation. The section is framed so minutely that it is impossible to escape the conclusion that it was designed to narrow exemption from taxation, and to limit them to the objects expressly named."

It clearly appears from the stipulation of fact as well as from the averments of the pleadings that appellant association is one largely engaged in charitable work, but we are convinced from a reading of the articles of the association as well as from its by-laws and rules of conduct, that its primary object, if not its principal one, is to look after and take care of the poor and needy among its members. This, of course, while a charity is not a public one but merely private. Although the organization does perhaps more public charity than it does private, it is nevertheless not an institution of purely public charity. In the case of Merrick Lodge I. O. O. F. v. City of Lexington, 175 Ky. 275, in treating of a phase of the case much akin to the one now under consideration we observed:

"But the fundamental principle, which makes taxation the rule and exemption the exception, requires that immunity from sharing the common bur-

dens be granted only to those who. assume duties which the state itself should discharge; and, it being a general principle that all exempting statutes are to be strictly construed, it is necessary for the claimant of exemption from taxation to bring himself within the exact terms of the relieving law. When, therefore, the statute exempts only institutions of purely public charity, as section 170 of our Constitutions of purely public charity, as section 170 of our Constitution does, the claimant must not only be a charitable institution, but its charity must be purely and wholly public charities. City of Dayton v. Trustees of Speers Hospital, 165 Ky. 61, 176 S. W. 361.''

It appears that the general rule is to the same effect as shown by the following cases: Green Bay Lodge No. 235 B. P. O. Elks v. Green Bay, 122 Wisc. 452; N. Y. Lodge No. 1, B. P. O Elks v. Purdy, 167 N. Y. S. 285, 179 App. Div. 805; St. Louis Lodge No. 9, B. P. O. Elks v. Kaelin Col., 262 Mo. 444, 171 S. W. 329 (decided December 2, 1914); Boston Lodge No. 10 B. P. O. Elks v. Boston, 217 Mass. 176, 104 N. E. 453 (decided February 28, 1914).

Admittedly the appellant association is not one of purely public charity although it is one largely devoted to charitable work, some of which is purely public but a part of which is in its nature private. It therefore does not come within the exemption provided by section 170 of our Constitution, and the learned chancellor did not err in so holding.

Judgment affirmed. Whole court sitting.