**CITY OF LOUISVILLE et al. v. BABB,**
**County Treasurer.***
No. 5276.

Circuit Court of Appeals, Seventh Circuit.
Jan. 3, 1935.

Rehearing Denied Feb. 26, 1935.

*Writ of certiorari denied 55 S. Ct. 650, 79 L. Ed. ——.

Arthur B. Bensinger, of Louisville, Ky., and Wilmer T. Fox, of Jeffersonville, Ind., for appellants.

Merle N. A. Walker, of Indianapolis, Ind., and Walter E. Prentice, L. A. Douglass, and Joseph H. Warder, Sr., all of Jeffersonville, Ind., for appellee.

Before SPARKS and FITZHENRY, Circuit Judges, and LINDLEY, District Judge.

FITZHENRY, Circuit Judge.

This is an appeal from a decree in favor of defendant in an action wherein plaintiffs . (appellants here) sought to enjoin Charles V. Babb, treasurer of Clark county, Ind., from levying and collecting taxes upon their property located in that county. The property consists of the part of a bridge, connecting the cities of Louisville, Ky., and Jeffersonville, Ind., which lies within the State of Indiana, together with the administration building, tollhouses, tools, etc. and the real estate upon which the bridge and other property are located.

The facts in the case are not disputed, and are briefly stated in the opinion of the District Judge, from which we quote:

" * * * On February 25, 1928, there was enacted by Congress a law 'Authorizing the City of Louisville, Kentucky, to Construct, Maintain, and Operate a Toll Bridge across the Ohio River at or near said City.' [45 Stat. 146.]

"There was also enacted by the General Assembly of the State of Kentucky an act providing for the incorporation of the plaintiff Louisville Bridge Commission (hereinafter referred to as the Commission) for the purpose of the construction, operation, and repair of such bridge. Pursuant to such law, the Commission came into existence, and did construct the bridge in question connecting the cities of Louisville, Ky., and Jeffersonville, Ind. The title to all the real estate upon which the bridge, office building, tollhouses, etc., are located was taken in the name of the city of Louisville and now stands in the name of such city. The bridge was constructed by the Commission, and bonds were issued by the city of Louisville for the payment of the construction thereof. The bridge, pursuant to the act of Congress, was to be, and is, a tollbridge. Every person using such bridge is required to pay toll for the privilege thereof, including the city of Jeffersonville, Ind., and the United States government. The police officers of Jeffersonville, however, are exempt therefrom when in the pursuit of persons who have committed crimes and are fleeing from arrest. A schedule of tolls for the use of such bridge was prepared by the plaintiffs, placed in effect, and is still effective. The construction of the bridge was not for the purpose of profit, but the schedule of tolls provides sufficient income for the payment of the cost of maintenance, operation, and repair thereof, and also provides a sinking fund sufficient to pay the bonds and interest thereon as they mature. The plaintiff Commission will continue the operation of the bridge until the bonded indebtedness thereon has been fully paid, at which time such Commission will cease to function and will pass out of existence. The city of Louisville will then assume the du-

ty of operating such bridge, and tolls may be collected, unless provision is otherwise made, for the cost of maintenance, operation, and repair thereof. The bridge is open to the use of the public, provided the users thereof pay the required toll. Thousands of persons throughout the United States and foreign countries pass over this bridge. * * *

"Prior to the commencement of this suit, a taxpayer of Clark county, Ind. (in which county the bridge in question is located), filed two suits in the Clark circuit court against the auditor of such county, in which suits the plaintiff sought to mandate the auditor to place upon the tax duplicates of such county the property in question. The auditor was represented in such suits by the county attorney, and also by Mr. Wilmer T. Fox, one of counsel for plaintiffs in this action, and who, in the litigation in the Clark circuit court, while attorney of record for the auditor, was employed and compensated by the Louisville Bridge Commission, one of the plaintiffs in this suit. The Clark circuit court, after a full hearing, held that the property was not exempt from taxation, under the Act of 1929, supra [Acts Ind. 1929, c. 94], and entered a decree mandating the auditor to have the same entered upon the tax duplicates of the county. No appeal was taken from this decree, and in compliance therewith, the auditor did place the property upon the tax duplicates and certify the same to Charles V. Babb, county treasurer."

The questions presented upon this appeal will be considered under three headings: (1) The jurisdictional questions; (2) whether this bridge is immune from taxation because constructed, maintained, and operated in furtherance of an act of Congress which has created a federal policy to secure a bridge free of tolls; (3) the constitutionality of the Indiana statute exempting the property from taxation.

It is contended by appellee that the case is not properly before this court (a) because appellants have an adequate remedy at law and (b) the questions have been adjudicated by the Circuit Court of Clark County, Ind., and appellants are estopped from prosecuting this action, though not parties to that suit, because they had knowledge of its institution and pendency and participated in the trial thereof.

■ (a) Have appellants an adequate remedy at law? The Indiana statutes provide certain remedies for aggrieved taxpayers. None of these, however, are available in a federal court of law, and it has been held that a remedy in the state court is not enough. Chicago, Burlington, etc., Co. v. Osborne, 265 U. S. 14, 44 S. Ct. 431, 68 L. Ed. 878; City Bank Farmers' Trust Co. v. Schnader, 291 U. S. 24, 54 S. Ct. 259, 78 L. Ed. 628; National Surety Co. v. State Bank (C. C. A.) 120 F. 593, 61 L. R. A. 394; Risty v. Chicago, etc., R. Co., 270 U. S. 378, 46 S. Ct. 236, 240, 70 L. Ed. 641. In the last-cited case the court said:

"* * * The test of equity jurisdiction in a federal court is the inadequacy of the remedy on the law side of that court and not the inadequacy of the remedies afforded by the state courts."

■ (b) Are appellants estopped from prosecuting this action, because the questions presented in this case have been adjudicated by the circuit court of Clark county, Ind.? While the city of Louisville and the Louisville Bridge Commission had knowledge of the suit in the circuit court and participated in the trial through their attorneys, they filed no intervening petition and were never made parties to the suit. The record shows that counsel for appellants did not have complete control of the defense in that action. We think the District Court properly held that no duty devolved upon them to appear voluntarily and intervene, and their failure to appear cannot preclude their seeking protection against the judgment entered. Chase National Bank v. Norwalk, 291 U. S. 431, 54 S. Ct. 475, 78 L. Ed. 894.

■ Will the taxation of appellants' property within the state of Indiana, by that state, be a violation of the provisions of the Constitution of the United States? We find nothing in the act of Congress authorizing the construction of this bridge which might properly be construed as forbidding the state to impose taxes. A tax levied by the state of Indiana would not be a tax upon interstate business. Henderson Bridge Co. v. City of Henderson, 173 U. S. 592, 19 S. Ct. 553, 43 L. Ed. 823.

Is the statute of the state of Indiana which attempts to exempt bridges of this character from taxation constitutional? The Constitution of the state of Indiana, article 10, § 1, reads as follows:

"The general assembly shall provide, by law, for a uniform and equal rate of as-

sessment and taxation; and shall prescribe such regulations as shall secure a just valuation for taxation of all property, both real and personal, excepting such only, for municipal, educational, literary, scientific, religious or charitable purposes, as may be especially exempted by law."

In an act approved March 11, 1929, Acts of 1929, p. 296, c. 94, the General Assembly of the state of Indiana attempted to exempt bridges of the character here in question from taxation. It is admitted that in passing this statute the Legislature had in mind the particular property here involved. The act reads as follows:

"Section 1. Be it enacted by the general assembly of the State of Indiana, That the following property shall be exempt from taxation: Any bridge now or hereafter constructed wholly within the State of Indiana across a navigable stream or now or hereafter constructed across a stream forming a boundary of this state, and the real estate and personal property appurtenant thereto, when owned either by the State of Indiana or by any municipality or political subdivision thereof or by another state or by any municipality or political subdivision of such other state, if such bridge be free of tolls or if such bridge shall have been authorized or consented to by an act of congress: Provided, That, except for tolls necessary for the proper maintenance, repair and operation of such bridge and its approaches under economical management, the same shall be operated free of tolls after a sinking fund shall have been provided from tolls sufficient for the amortization of the cost of the bridge and its approaches, including reasonable interests and financing cost."

The District Court held this statute to be unconstitutional because the property named fell within none of the exceptions named in the pertinent provisions of the Constitution. It is contended by appellants that the property falls within the class which may be excepted because it is for a "municipal purpose."

▮ The burden of proof, where the constitutionality of a statute is in question, is always upon the party asserting the unconstitutionality; the presumption always being that the Legislature knows its constitutional limitations of power and has not exceeded them.

In Michigan Central R. Co. v. Powers, 201 U. S. 245, 26 S. Ct. 459, 461, 50 L. Ed. 744, Mr. Justice Brewer, speaking for the Supreme Court, said:

"Undoubtedly a Federal court has the jurisdiction, and, when the question is properly presented, it may often become its duty, to pass upon an alleged conflict between a statute and the state Constitution, even before the question has been considered by the state tribunals. All objections to the validity of the act, whether springing out of the state or of the Federal Constitution, may be presented in a single suit, and call for consideration and determination. At the same time the Federal courts will be reluctant to adjudge a state statute to be in conflict with the state Constitution before that question has been considered by the state tribunals. Especially is this true when the statute is one affecting the revenues of the state, and therefore of general public interest."

In the case of Henderson Bridge Co. v. City of Henderson, 173 U. S. 592, 19 S. Ct. 553, 562, 43 L. Ed. 823, the Supreme Court said:

"As an act of congress should not be declared unconstitutional, unless its repugnancy to the supreme law of the land is too clear to admit of dispute, so a local regulation under which taxes are imposed should not be held by the courts of the Union to be inconsistent with the national constitution unless that conclusion be unavoidable. All doubt as to the validity of legislative enactments must be resolved, if possible, in favor of the binding force of such enactments."

▮ The power of the Legislature of Indiana to tax property is limited only by the Constitution of the state and of the United States. It may exempt from taxation only property which falls within one of the classifications enumerated in the Constitution of the state. Appellants contend that the property in question may legitimately be exempted from taxation as property for a "municipal purpose." They argue that a classification of a bridge across a stream which connects two cities divided by the Ohio river as property for a "municipal purpose" is not so unreasonable as to overcome the presumption in favor of its constitutionality.

▮ It is not reasonable to suppose that the word "municipal" was used in the Constitution of the state of Indiana in any narrow or restricted sense. Had it been intended to cover only such property as would

serve a "city" purpose, there would be no provision in the Constitution for exempting the property of the state, county, or township from taxation. The reasonable meaning to be given to the phrase "municipal purpose" when so used, is the broader meaning—equally well recognized by the courts—that of public or governmental purpose as distinguished from private. That this is a generally accepted definition of the term "municipal" is disclosed by the following authorities: Dillon, Municipal Corporations (5th Ed.) § 73; 19 R. C. L. 691; Cook v. Port of Portland, 20 Or. 580, 27 P. 263, 13 L. R. A. 533; Horton v. Mobile School Commissioners, 43 Ala. 598; State v. Board of Levee Com'rs, 109 La. 403, 33 So. 385, 399; Kent, etc., Society v. Houseman, 81 Mich. 609, 46 N. W. 15. The adjective "municipal" is much more elastic than is the word "municipality" or the term "municipal corporations." 5 Words and Phrases, Third Series, 253. In Bouvier's Law Dictionary we find:

"It (municipal) has two meanings: (1) relating to cities, towns and villages; (2) relating to the state or nation; Powder R. C. Co. v. Board, 3 Wyo. 597, 29 P. 361, 31 P. 278. See Horton v. Com'rs, 43 Ala. 598 * * * the word has a more extensive meaning; for example, we call 'municipal law' not the law of the city only, but the law of the state." Bouv. Law Dict. (Rawle's 3d Rev.) 2269.

The Supreme Court of Indiana has never construed the words "municipal purposes" as they appear in the Constitution of Indiana. Our attention is called to the decision of the Supreme Court in the case of Root v. Erdelmeyer, 37 Ind. 225, 226, where the words "municipal purposes" were construed as they appear in a statute with reference to the taxing of the stock of state and national banks. There the county of Marion was endeavoring to collect a tax under the head of "municipal purpose" which was admittedly levied for the purpose of paying a donation by a township to aid in building a railroad. The Supreme Court held that it could not do so and that aid of this character was not a "municipal purpose" within the meaning of the statute. It was capital stock in the Bank of the State of Indiana that was sought to be taxed. The act creating the Bank of the State of Indiana contained this provision, section 15 (1 Gav. & H. Rev. St. Ind. 1870, p. 142):

"The capital stock of said bank shall be subject to the same rate of taxation for state and county purposes as the property or stock of other moneyed corporations; and the real estate and other property of said bank and branches, situated in any city or town, shall be taxable for municipal purposes, in the same manner as other property so situated, but the capital stock of said bank or branches shall not be taxable for municipal purposes."

The court said:

"In this section it is too clear to admit of controversy, that towns and cities are the municipalities contemplated, and that the prohibition to tax for municipal purposes is a prohibition only to tax for town or city purposes."

While this case holds that the words "municipal purpose" appearing in the statute there being considered were used in the more limited sense, it recognizes the broader interpretation of the word "municipal," and cannot possibly be construed as holding that the words are to have the narrower interpretation wherever used in the Constitution of the state. The court said:

"The question arises, what is meant by the words 'municipal purposes,' as used in the section above quoted?

"The appellant contends that the words were used in the broad sense that would embrace taxation for county and township purposes, as counties and townships are municipalities. But in this broad sense, a municipality embraces the State itself. * * * Webster says, 'Municipal, as used by the Romans, originally designated that which pertained to a municipium, a free city or town. It still retains this limited sense, but we have extended it to what belongs to a state or nation as a distinct, independent body. Municipal law or regulation respects solely the citizens of a state, and is thus distinguished from commercial law, political law, and the law of nations.' "

Once we reach the conclusion that it was in the broader sense of "public purpose" that the Constitution employs the term "municipal purpose," the conclusion that a bridge of the character here exempted serves a public purpose, and hence that the legislative act conveying the exemption is not in contravention of any constitutional limitation of the power of the Legislature, is inescapable. As was said by

Justice Bradley in the case of Commissioners of Dodge County v. Chandler, 96 U. S. 205, 208, 24 L. Ed. 625:

" * * * We can hardly refrain from expressing surprise that there should be any doubt on the subject. What was the bridge built for, if not fit for public use? Certainly not for the mere purpose of spanning the Platte River as an architectural ornament, however beautiful it may be as a work of art; nor for the private use of the common council and their families; nor even for the exclusive use of the citizens of Fremont. All persons, of whatever place, condition, or quality, are entitled to use it as a public thoroughfare for crossing the river. The fact that they are required to pay toll for its use does not affect the question in the slightest degree. Turnpikes are public highways, notwithstanding the exaction of toll for passing on them. Railroads are public highways, and are the only works of internal improvement specially named in the act; yet no one can travel on them without paying toll. Railroads, turnpikes, bridges, ferries, are all things of public concern, and the right to erect them is a public right. If it be conceded to a private individual or corporation, it is conceded as a public franchise; and the right to take toll is granted as a compensation for erecting the work and relieving the public treasury from the burden thereof. Those who have such franchises are agents of the public. They have, it is true, a private interest in the tolls; but the works are public, and subject to public regulation, and the entire public has the right to use them. These principles are so elementary in the common law, that we can hardly open our books without seeing them recognized or illustrated. * * * These few sentences indicate conclusively that the existence of a toll is not inconsistent with the public character of the work on which it is exacted. * * * In our judgment, the bridge in question is a public bridge, and a work of internal improvement within the meaning of the statute."

■ The furnishing of facilities for economical and rapid communication between the different parts of a state has become an important function of government. If a bridge is constructed in such a place and in such a manner as to effect these ends, it results in a benefit or advantage to the public at large. It performs a work for the people of Indiana which the people of that state might otherwise have to carry on at their own expense and, though exempted from taxation, it may, in fact, lessen rather than increase the tax burden. The Legislature of the state of Indiana might itself have undertaken to improve the public highway by the construction of such a bridge. It was, in fact, built by a municipality of another state. Nevertheless, the question of fact as to whether this property was serving a municipal purpose of the state of Indiana was one which the Legislature of that state should properly decide, and its conclusion in that respect must be conclusive here unless it is clearly shown to be unreasonable. Williams v. Mayor and City Council of Baltimore, 289 U. S. 36, 53 S. Ct. 431, 77 L. Ed. 1015.

That the bridge will be of particular value and benefit to the citizens of Jeffersonville, cannot be questioned. If we adopt the narrower construction of the word "municipal," we still find that the property in question is serving the "municipal purposes" of the city of Jeffersonville, Ind. In the ordinance in which the city of Jeffersonville granted permission to the bridge commission to erect this bridge and extend it into the city, it declared (what was obvious) that the bridge would be a public benefit and convenience to the inhabitants.

■ Where the law of other states has made the purpose for which property is used the test of whether it should be exempted from taxation, it has been held that ownership is not material. Washburn College v. Shawnee County, 8 Kan. 344; St. Mary's College v. Crowl, 10 Kan. 442; Scott v. Society of Russian Israelites, 59 Neb. 571, 81 N. W. 624; Gerke v. Purcell, 25 Ohio St. 229; County of Hennepin v. Bell (State v. Bell), 43 Minn. 344, 45 N. W. 615; Benevolent Ass'n of Elks v. Wintersmith, 204 Ky. 20, 263 S. W. 670; Anniston City Land Co. v. State, 160 Ala. 253, 48 So. 659.

To sustain appellee's construction of article 10, § 1, of the Indiana Constitution, two cases are cited and relied upon by the District Court. State of Kansas ex rel. Taggart et al. v. Holcomb, County Clerk, 85 Kan. 178, 116 P. 251, 50 L. R. A. (N. S.) 243, Ann. Cas. 1912D, 800 and People et al. v. St. Louis, 291 Ill. 600, 126 N. E. 529.

The Kansas case involves the construction of article 11, § 1, of the Kansas Constitution. After requiring a uniform and equal rate of assessment and taxation, it contains the following provision:

"\* \* \* But all property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes \* \* \* shall be exempted from taxation."

The case was to compel the county clerk to extend upon the tax rolls of the county for taxation the waterworks plant owned by the municipality of Kansas City, Mo., which was situated in Wyandotte county, Kan. It was held that, even though the waterworks plant was owned by a municipality, such municipality, being a citizen of the state of Missouri, was not exempt from taxation in Kansas. It was clear in that case that the exemption contended for was outside the operation of the Constitution of Kansas. That case is particularly relied upon because the word "municipal" there occurs. In the Kansas Constitution, the words "for state, county, municipal \* \* \* and charitable purposes," when considered in the light of the context, show that the word "municipal" was used to describe a municipal corporation, such as a city, town, or village. The larger municipal corporation of the state and the lesser municipal corporation of the county being expressly excluded, the Constitution lends itself readily to the construction of the word "municipal" as being an ordinary local municipal corporation, otherwise described as incorporated cities, towns, and villages. Had the same language been used in the Indiana Constitution, the decision might be highly persuasive here.

In People et al. v. St. Louis, 291 Ill. 600, 126 N. E. 529, 531, the Illinois Supreme Court was construing article 9, § 3, of the Illinois Constitution. There the exemption is made by these words "the property of the state, counties, and *other* municipal corporations." So it will be seen that the basis of the exemption of the property above described under the Illinois Constitution is limited to the ownership, though other property may be exempted if used exclusively for certain specific purposes. The language used in the Illinois Constitution shows that the Constitutional Convention realized that the term "municipal corporations" included the state and counties.

The words in the Indiana Constitution (article 10, § 1) upon the subject are essentially different from both those in the Illinois and Kansas Constitutions out of which the two authorities just cited arise. After declaring for a uniform and equal rate of assessment and taxation, etc., the language used is "excepting such only, for municipal, educational, literary \* \* \* or charitable purposes, as may be especially exempted by law." Unquestionably the writers of the Indiana Constitution used the expression "municipal \* \* \* purposes" as describing public or governmental purposes which are inherently matters exclusively in the control of the state, even though at times, and for the convenience of the state and local communities, it may create agencies to perform municipal functions. An incorporated city, town, or village, at the most, has no inherent rights in the powers which it exercises, and in fact has no governmental powers except such as are granted to it by the state. These powers can be altered, amended, or repealed at any time. In other words, the repository of all municipal powers can terminate the agency at will. The Indiana constitutional provision makes no reference to any element of ownership, but authorizes the Legislature in writing an exemption law to make certain exemptions based upon the purposes for which the property is used. So, in this case, the building of the bridge and the connecting of it with the highways of the state has created a property designated by the Legislature as serving a municipal purpose within the provision of the Constitution of Indiana. If the property serves a municipal purpose, then the Legislature had the power to enact the statute which it is here contended is unconstitutional. The passage of the act is itself a construction of the provision of the Constitution by the General Assembly to the effect that the property involved falls within the classification of a municipal purpose, and that construction will not be disturbed unless clearly unreasonable.

Reversed and remanded for further proceedings in harmony with the views herein expressed.